UNITED STATES OF AMERICA
UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

---

GREGORY LEE,

        Plaintiff,        Case No. 1:17-cv-797

v.        Honorable Robert J. Jonker

ROBERT TINERELLA et al.,

        Defendants.
_____/

## **OPINION**

This is a civil rights action brought by a state prisoner under 42 U.S.C. § 1983. The Court has granted Plaintiff leave to proceed *in forma pauperis*. Under the Prison Litigation Reform Act, PUB. L. NO. 104-134, 110 STAT. 1321 (1996), the Court is required to dismiss any prisoner action brought under federal law if the complaint is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant immune from such relief. 28 U.S.C. §§ 1915(e)(2), 1915A; 42 U.S.C. § 1997e(c). The Court must read Plaintiff's *pro se* complaint indulgently, *see Haines v. Kerner*, 404 U.S. 519, 520 (1972), and accept Plaintiff's allegations as true, unless they are clearly irrational or wholly incredible. *Denton v. Hernandez*, 504 U.S. 25, 33 (1992). Applying these standards, the Court will dismiss Plaintiff's complaint for failure to state a claim against Defendants Perez, Mote, Robinson, Vroman, Young, Simpson, Davids, and Trierweiler. The Court will serve the complaint against Defendants Tinerella, Buchin, Rose, Spitzley, and Piggot.

**Discussion**

I.       Factual allegations

Plaintiff Gregory Lee presently is incarcerated with the Michigan Department of Corrections (MDOC) at the Ionia Correctional Facility (ICF), though the actions about which he complains occurred while he was housed at the Bellamy Creek Correctional Facility (IBC). He sues the following IBC officials: Correctional Officers Robert Tinerella, (unknown) Rose, (unknown) Spitzley, and (unknown) Piggot; Assistant Resident Unit Supervisor (ARUS) Jared Buchin; Sergeant Victoria Perez; Resident Unit Manager (RUM) R. Mote; Step-I Grievance Coordinator M. Robinson; Step-II Grievance Coordinator Mitch Vroman; CPC Manager B. Young; Mail Room Officer B. Simpson; Deputy Warden John Davids; and Warden Trierweiler.

Shortly before March 12, 2016, Plaintiff assisted another prisoner, Anthony Baldwin, to file a grievance against Defendant Tinerella for allegedly harassing and degrading Baldwin. On March 12, 2016, at 10:00 a.m., Defendant Tinerella came from his own unit into Plaintiff's housing unit, demanding to know why Plaintiff was assisting prisoner Baldwin. When Plaintiff refused to respond, Tinerella told Plaintiff, "After lunch I[']m going to give you something to write a grievance about since you like helping people file grievances." (Compl., ECF No. 1, PageID.11.) Plaintiff acknowledges that he placed a small piece of paper in his window, stating, "Officer Tinerella Is Racist." (*Id.*) At about 10:15 a.m., Defendant Rose came to Plaintiff's cell, kicking the door and yelling, "Nigger boy I[']m going to kill you nigger boy now take it down before we make you take it down." (*Id.*, PageID.12.) At approximately 10:30 a.m., Defendants Tinerella, Rose, and Spitzley came into Plaintiff's cell, purportedly in violation of policy. Tinerella pushed Plaintiff in the face, causing Plaintiff to lose his balance and strike his head.

At about 12:30 a.m., Nurse Karen Rosa evaluated Plaintiff's injuries, finding a knot and an abrasion on the top right side of his head. Nurse Rosa asked how the injury occurred, and Plaintiff told her and asked her to get a sergeant. Nurse Rosa talked to Defendant Perez at about 12:50 p.m. At about 1:30 p.m., Defendant Perez came to Plaintiff's cell and asked Plaintiff what had happened. Plaintiff told Perez that he was assaulted by Defendant Tinerella. Perez asked Plaintiff to speak up, but Plaintiff had a severe headache and could not yell. Several inmates, however, explained to Perez what had happened. Defendant Perez stated, "Oh, well, What do you want me to do. I[']m about to go home." (*Id.*, PageID.13.) She then left the wing.

Plaintiff wrote a grievance on March 19, 2017, alleging that Defendants Tinerella, Rose, and Spitzley entered his cell improperly. He alleged that Tinerella assaulted him, and Rose and Spitzley did nothing to intervene, thereby failing to protect Plaintiff. On March 26, 2016, as Plaintiff was returning from the yard, Defendant Rose told Plaintiff that, if he was afraid for his life, he should lock up. Defendant Rose also humiliated Plaintiff by telling the nurse that Plaintiff had "bowel issues," because he was "scared shitless." (*Id.*) Plaintiff filed a grievance the next day, accusing Defendant Rose of harassment. One week later, Defendant Buchin came to the cell to review the grievance with Plaintiff. Buchin told Plaintiff that he had heard about the comments, that they were inappropriate, and that he would have Rose removed from Unit-1 if Plaintiff signed off on the grievance. Plaintiff alleges that Defendant Buchin never upheld the agreement. On April 4, 2016, Defendant Buchin stopped at Plaintiff's cell, and allegedly admitted that MICH. DEP'T OF CORR., Policy Directive 02.03.100 ¶ N(1)-(2) requires that a staff member being investigated by internal affairs must be suspended or moved away from the individual involved. However, after Plaintiff wrote a letter to internal affairs on April 26, 2016, Buchin told Plaintiff, "I[']m not going

to allow you to file a complaint on my coworker. All legal mail has to go through me. I'll give you the goldenrod copy in case I feel like it." (*Id.*, PageID.14) Plaintiff alleges that the letter was never processed. Also on April 4, Plaintiff stopped Defendant Deputy Warden Davids and explained the March 12 incident. Defendant Davids indicated that he would look into the incident, but Plaintiff heard nothing.

On April 19, 2016, as they were escorting Plaintiff from his psychiatric visit, Defendants Piggot and Rose took Plaintiff to a different unit, stating that Plaintiff was being moved "because you're a problem so I put you over here with the other problems." (*Id.*) Plaintiff contends that Defendants Piggot and Rose conspired to harass him and to retaliate against him for filing grievances. When they arrived at Plaintiff's new cell, "Defendant Piggot maliciously and sadistically assaulted him by pulling the restraint leash through the food slot until they cut into Plaintiff's skin producing blood and bruises . . . ." (*Id.*) Plaintiff told Piggot that the cuffs were cutting into him and that Piggot was going to break Plaintiff's wrist if he did not stop. Defendant Piggot simply laughed and kept pulling on the chain. Defendant Rose was present but took no action to stop Piggot from hurting Plaintiff.

At about 1:30 p.m. on April 19, Defendant Perez came to retrieve the handcuffs from Plaintiff. When she saw the injuries, she went to get a camera. Defendant Perez assured Plaintiff that a nurse would see him shortly. Plaintiff was seen by Nurse Hammond at 2:30 p.m. Plaintiff talked to Defendant Davids again, and Davids again told Plaintiff that he would look into the matter.

Plaintiff next complains that he did not receive responses to his Step-I or Step-II grievances related to the March 12, 2016 incident. On May 5, 2017, Plaintiff attempted to file a Step-III grievance. He gave the document to Defendant Buchin for mailing. When he did not

receive a reply from the MDOC Director's Office for several months, he inquired whether the office had received the grievance. On October 21, 2016, Plaintiff was notified that the Director's Office had not received the Step-III grievance. In the interim, on July 13, 2016, Plaintiff finally received his Step-I grievance response from Defendants Robinson and Young, which, he alleges, wholly mischaracterized his grievance and mentioned another prisoner, ostensibly for malicious and retaliatory reasons. Plaintiff alleges that Robinson and Young conspired to deprive him of his administrative remedies.

Plaintiff next alleges that he filed a grievance concerning every issue in his complaint, but Defendant Grievance Coordinators Robinson and Vroman deliberately ignored the harm being done to Plaintiff when they denied his grievances. Specifically, he complains that the April 19, 2016, assault was captured on camera and was documented by the nurse's report, yet Defendants Robinson and Vroman found that insufficient evidence existed to support the grievance. Plaintiff contends that Defendants Robinson and Vroman conspired to deprive him of his administrative remedies.

On May 26, 2016, Plaintiff wrote Defendant Mail Room Officer Simpson a kite, explaining that he was not getting his mail processed, and he asked her to send him a copy of all outgoing legal and interdepartmental mail processed for the last six months. The kite was never answered. Plaintiff submitted a second kite on March 13, 2017, asking for the same information, but only with respect to mail sent on April 16, 2016 and May 5, 2016. Defendant Simpson's response indicated that no mail was processed on those two days.

On June 8, 2016, Plaintiff was transferred to another prison. However, he was brought back to IBC on November 29, 2016. On February 16, 2017, Plaintiff was placed back into

Unit 1, where he had experienced problems with staff the year before. Plaintiff sent a kite to the IBC Inspector. Inspector Welton came to visit Plaintiff on March 9, 2017. Welton advised that he would pass a message to Defendant Davids about Plaintiff's discomfort with being placed back into the same unit and having his legal mail handled by Defendant Buchin.

At approximately February 23, 2017, Plaintiff explained to Defendant Davids that he was being harassed by Defendant Buchin, and he advised Davids that he had filed a lawsuit against Defendants Buchin, Piggot, and Tinerella, who were all regulars in the housing unit. A few minutes later, Plaintiff explained to Defendant Warden Trierweiler about the incidents that occurred on March 12, 2016, and April 19, 2016, and about Buchin's interference with Plaintiff's legal mail. Defendant Trierweiler advised that he would look into the matter. When Plaintiff heard nothing from Trierweiler, he sent a "SPON Order Request" to Defendant Trierweiler on March 1, 2017. (*Id.*, PageID.17.)[1]

On February 16, 2017, Plaintiff submitted a motion for temporary restraining order to the Assistant Resident Unit Supervisor, for notarization. After it was notarized, Plaintiff, on February 23, 2017, submitted the motion, to Defendant Buchin, for mailing to this Court. When Plaintiff heard nothing from the Court for several weeks, he wrote the Court to inquire about the motion. The Court responded that it had never received the motion. Plaintiff complains that this is the fourth incident involving his legal mail being waylaid. Plaintiff immediately filed a grievance. Defendants Mote and Davids responded that they would investigate. They advised Plaintiff a week

---

[1] Under MICH. DEP'T OF CORR., Policy Directive 03.03.110, "SPON" is the acronym for "special problem offender notice." *Id.* A SPON is issued whenever an offender is likely to be a danger to another inmate or employee or when an offender will require protection from another offender. *Id.* ¶ E. Plaintiff appears to suggest that he sought a SPON against one or more officers, rather than against another inmate.

later that his mail was sent and that it was out of their hands. Plaintiff asked for the tracking number, but Davids refused.

Four days later, Defendant Buchin came to Plaintiff's door, asking if Plaintiff was still filing grievances. Plaintiff responded, "If I have to." Defendant Buchin walked away, saying "Well Ima [sic] send you where you don[']t want to be." (*Id.*, PageID.19.) Two days later, on April 19, 2017, Defendant Davids came to Plaintiff's cell and told him, "Buchin got you riding out on a emergency rideout to Level 5." (*Id.*) When Plaintiff asked why, Defendant Davids responded, "Buchin felt it was a good move." (*Id.*) Plaintiff complains that the placement was improper, because, when he was seen by the Security Classification Committee on February 10, 2017, they indicated that, if he remained ticket-free for two months, he would be transferred to an alternate Level-4 confinement. Plaintiff alleges that Defendant Buchin took the actions he did in order to retaliate against Plaintiff for filing grievances and lawsuits.

In his claims for relief, Plaintiff alleges Defendant Tinerella maliciously assaulted him for assisting another inmate to file a grievance, in violation of both the First and Eighth Amendments. He also alleges that Defendant Piggot maliciously and sadistically used excessive force in pulling on the restraint leash, without penological justification. Plaintiff next claims that Defendants Tinerella, Rose, Spitzley, Piggot, and Buchin all retaliated against Plaintiff for filing grievances, in violation of the First Amendment. Plaintiff further claims that all Defendants "failed to prevent a conspiracy in relation to the other facts alleged in the complaint, by not taking action against those who harmed Plaintiff, thereby allowing them to continue to retaliate, including the retaliatory transfer. For relief, Plaintiff seeks compensatory and punitive damages, together with an injunction requiring the MDOC to relieve Defendants of their duties.

## II. Failure to state a claim

A complaint may be dismissed for failure to state a claim if it fails "'to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). While a complaint need not contain detailed factual allegations, a plaintiff's allegations must include more than labels and conclusions. *Twombly*, 550 U.S. at 555; *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). The court must determine whether the complaint contains "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 679. Although the plausibility standard is not equivalent to a "'probability requirement,' . . . it asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 556). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not 'show[n]' – that the pleader is entitled to relief." *Iqbal*, 556 U.S. at 679 (quoting FED. R. CIV. P. 8(a)(2)); *see also Hill v. Lappin*, 630 F.3d 468, 470-71 (6th Cir. 2010) (holding that the *Twombly/Iqbal* plausibility standard applies to dismissals of prisoner cases on initial review under 28 U.S.C. §§ 1915A(b)(1) and 1915(e)(2)(B)(i)).

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege the violation of a right secured by the federal Constitution or laws and must show that the deprivation was committed by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988); *Street v. Corr.*

*Corp. of Am.*, 102 F.3d 810, 814 (6th Cir. 1996). Because § 1983 is a method for vindicating federal rights, not a source of substantive rights itself, the first step in an action under § 1983 is to identify the specific constitutional right allegedly infringed. *Albright v. Oliver*, 510 U.S. 266, 271 (1994).

      A.      Defendants Perez, Mote, Robinson, Vroman, Young, Simpson, Davids, & Trierweiler

Plaintiff fails to make specific factual allegations against Defendants Perez, Mote, Robinson, Vroman, Young, Simpson, Davids, and Trierweiler, other than his claim that they failed to supervise their subordinates, failed to process his grievances, and failed to conduct an investigation into or take action on his grievances and kites. Plaintiff alleges that, by these actions, Defendants permitted other Defendants to engage in a conspiracy.

To the extent Plaintiff relies on these officials' failures to supervise, investigate, or respond to his grievances, Plaintiff fails to state a claim. Government officials may not be held liable for the unconstitutional conduct of their subordinates under a theory of respondeat superior or vicarious liability. *Iqbal*, 556 U.S. at 676; *Monell v. New York City Dep't of Soc. Servs.*, 436 U.S. 658, 691(1978); *Everson v. Leis*, 556 F.3d 484, 495 (6th Cir. 2009). A claimed constitutional violation must be based upon active unconstitutional behavior. *Grinter v. Knight*, 532 F.3d 567, 575-76 (6th Cir. 2008); *Greene v. Barber*, 310 F.3d 889, 899 (6th Cir. 2002). The acts of one's subordinates are not enough, nor can supervisory liability be based upon the mere failure to act. *Grinter*, 532 F.3d at 576; *Greene*, 310 F.3d at 899; *Summers v. Leis*, 368 F.3d 881, 888 (6th Cir. 2004). Moreover, § 1983 liability may not be imposed simply because a supervisor denied an administrative grievance or failed to act based upon information contained in a grievance. *See Shehee v. Luttrell*, 199 F.3d 295, 300 (6th Cir. 1999). "[A] plaintiff must plead that each

Government-official defendant, through the official's own individual actions, has violated the Constitution." *Iqbal*, 556 U.S. at 676. Plaintiff therefore fails to state a claim against these Defendants because of their failures to supervise or respond to grievances.

To the extent that Plaintiff alleges that these Defendants interfered with the processing of his grievances, Plaintiff also fails to state a claim. Plaintiff has no due process right to file a prison grievance. The courts repeatedly have held that there exists no constitutionally protected due process right to an effective prison grievance procedure. *See Hewitt v. Helms*, 459 U.S. 460, 467 (1983); *Walker v. Mich. Dep't of Corr.,* 128 F. App'x 441, 445 (6th Cir. 2005); *Argue v. Hofmeyer*, 80 F. App'x 427, 430 (6th Cir. 2003); *Young v. Gundy,* 30 F. App'x 568, 569-70 (6th Cir. 2002); *Carpenter v. Wilkinson,* No. 99-3562, 2000 WL 190054, at *2 (6th Cir. Feb. 7, 2000); *see also Antonelli v. Sheahan*, 81 F.3d 1422, 1430 (7th Cir. 1996); *Adams v. Rice*, 40 F.3d 72, 75 (4th Cir. 1994) (collecting cases). Michigan law does not create a liberty interest in the grievance procedure. *See Olim v. Wakinekona,* 461 U.S. 238, 249 (1983); *Keenan v. Marker*, 23 F. App'x 405, 407 (6th Cir. 2001); *Wynn v. Wolf*, No. 93-2411, 1994 WL 105907, at *1 (6th Cir. Mar. 28, 1994). Because Plaintiff has no liberty interest in the grievance process, Defendants' conduct did not deprive him of due process.

Moreover, Defendants' actions have not barred Plaintiff from seeking a remedy for his grievances. *See Cruz v. Beto*, 405 U.S. 319, 321 (1972). "A prisoner's constitutional right to assert grievances typically is not violated when prison officials prohibit only 'one of several ways in which inmates may voice their complaints to, and seek relief, from prison officials' while leaving a formal grievance procedure intact." *Griffin v. Berghuis*, 563 F. App'x 411, 415-416 (6th Cir. 2014) (citing *North Carolina Prisoners' Labor Union, Inc.*, 433 U.S. 119, 130 n.6 (1977)). Indeed,

Plaintiff's ability to seek redress is underscored by his pro se invocation of the judicial process. *See Azeez v. DeRobertis*, 568 F. Supp. 8, 10 (N.D. Ill. 1982). Even if Plaintiff was improperly prevented from filing a grievance, his right of access to the courts to petition for redress of his grievances (i.e., by filing a lawsuit) cannot be compromised by his inability to file institutional grievances, and he therefore cannot demonstrate the actual injury required for an access-to-the-courts claim. *See, e.g., Lewis v. Casey*, 518 U.S. 343, 355 (1996) (requiring actual injury); *Bounds v. Smith*, 430 U.S. 817, 821-24 (1977). The exhaustion requirement only mandates exhaustion of *available* administrative remedies. *See* 42 U.S.C. § 1997e(a). If Plaintiff were improperly denied access to the grievance process, the process would be rendered unavailable, and exhaustion would not be a prerequisite for initiation of a civil rights action. *See Ross v. Blake*, 136 S. Ct. 1850, 1858-59 (2016) (reiterating that, if the prisoner is barred from pursuing a remedy by policy or by the interference of officials, the grievance process is not available, and exhaustion is not required); *Kennedy v. Tallio,* 20 F. App'x 469, 470 (6th Cir. 2001). In light of the foregoing, the Court finds that Plaintiff fails to state a cognizable claim against Defendants Perez, Mote, Robinson, Vroman, Young, Simpson, Davids, and Trierweiler for interference with his grievances.

In his final allegation against these Defendants, Plaintiff alleges that Defendants Perez, Mote, Robinson, Vroman, Young, Simpson, Davids, and Trierweiler "failed to prevent a conspiracy" among Defendants Tinerella, Buchin, Rose, Spitzley, and Piggot. This claim fails on the principles just discussed. Plaintiff does not allege that Defendants engaged in active conduct that could render them liable under § 1983.

For all these reasons, Plaintiff fails to state a claim against Defendants Perez, Mote, Robinson, Vroman, Young, Simpson, Davids, and Trierweiler.

B. Defendants Tinerella, Buchin, Rose, Spitzley, and Piggot

Upon initial review, the Court concludes that Plaintiff has sufficiently alleged at least one claim against Defendants Tinerella, Buchin, Rose, Spitzley, and Piggot. The Court therefore will order service of the complaint on these Defendants.

**Conclusion**

Having conducted the review required by the Prison Litigation Reform Act, the Court determines that Defendants Perez, Mote, Robinson, Vroman, Young, Simpson, Davids, and Trierweiler will be dismissed for failure to state a claim under 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c). The Court will serve the complaint against Defendants Tinerella, Buchin, Rose, Spitzley, and Piggot.

An Order consistent with this Opinion will be entered.


Dated: October 18, 2017            /s/ Robert J. Jonker
                                   ROBERT J. JONKER
                                   CHIEF UNITED STATES DISTRICT JUDGE